IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS CARPELLOTTI, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. |
| | ) | |
| COMMONWEALTH OF PENNSYLVANIA | ) | **JURY TRIAL DEMANDED** |
| DEPARTMENT OF TRANSPORTATION, | ) | |
| LESLIE S. RICHARDS, SECRETARY OF | ) | |
| TRANSPORTATION, JOSEPH SZCZUR, | ) | |
| RON CLARK, TIM COOK, SHERRI NORRIS | ) | |
| and MARCIA HARRER, | ) | |
| | ) | |
| Defendants | ) | |

## VERIFIED CIVIL ACTION COMPLAINT

### I.   INTRODUCTORY STATEMENT

1.    This action is brought by Nicholas Carpellotti, a dedicated Pennsylvania

Department of Transportation (hereinafter referred to as "PennDOT") employee, as a result of the

retaliation and unwarranted violation of his rights inflicted upon him by the Defendants

following his good faith efforts to report and remedy departmental racism, the race based hostile

environment perpetrated and condoned by PennDOT supervisory personnel and the disciplinary

double standard that allows PennDOT's supervisory personnel to engage in objectionable

conduct with impunity.

2.    Rather than effectively address the racial hostility reported by Mr. Carpellotti,

Defendants isolated and retaliated against him through the imposition of disciplinary actions and

onerous working assignments.

3.     Defendants unlawful retaliation and efforts to chill the speech of those possessing the temerity to open PennDOT's racial problems to public scrutiny ultimately led to Defendants' termination of Mr. Carpellotti's employment.

4.     Through this action, stating claims pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, insofar as that statute creates a cause of action to enforce rights guaranteed by the Fourteenth Amendment to the United States Constitution, and the Commonwealth's Whistle Blower Law, 43 P.S. § 1421, et seq., Mr. Carpellotti seeks an award of declaratory and injunctive relief, monetary damages, costs and attorney's fees, as well as such other relief as is appropriate to remedy the violation of his statutory and constitutional rights.

## II.     PARTIES

5.     Plaintiff Nicholas Carpellotti is an adult individual who resides in Greensburg, Pennsylvania.  He was, at all times relevant to this Complaint, an employee of PennDOT.

6.     Defendant PennDOT is an official department of Pennsylvania state government. PennDOT maintains offices throughout the Commonwealth, including at 825 N. Gallatin Avenue, Ext., Uniontown, Pennsylvania 15401.

7.     Defendant Leslie S. Richards is Pennsylvania's Secretary of Transportation.  Her primary office address is 400 Forster Street, Harrisburg Pennsylvania 17102.

8.     Defendant Joseph Szczur held the position of District Executive for PennDOT District 12 at the time of the events giving rise to Mr. Carpellotti's causes of action.  As District Executive, Defendant Szczur's work address is 825 N. Gallatin Avenue, Ext., Uniontown, Pennsylvania 15401.

2

9.      Defendant Ron Clark was employed by PennDOT as Assistant District Executive, District 12 at the time of the events giving rise to Mr. Carpellotti's causes of action.  As Assistant District Executive, Defendant Clark's work address was  825 N. Gallatin Avenue, Ext., Uniontown, Pennsylvania 15401.

10.     Defendant Tim Cook held the position of County Maintenance Manager at the time of the events giving rise to Mr. Carpellotti's causes of action.  As County Maintenance Manager, Defendant Cook's current work address is 825 N. Gallatin Avenue, Ext., Uniontown, Pennsylvania 15401.

11.     Defendant Sherri Norris held the position of PennDOT's Director of Human Resources at time of the events giving rise to Mr. Carpellotti's causes of action.  Her current work address is believed to be Pennsylvania Turnpike Commission, P.O. Box 67676, Harrisburg, PA 17106.

12.     Defendant Marcia Harrer held the position of PennDOT's Human Resources Officer at the time of the events giving rise to Mr. Carpellotti's causes of action.  Defendant Harrer's work address is 825 N. Gallatin Avenue, Ext., Uniontown, Pennsylvania 15401. Mr. Carpellotti

## III.    FACTS

13.     Mr. Carpellotti was a PennDOT District 12-5 employee from December 2004 until his termination, which was effective as of August 22, 2014.

14.     At the time of his termination, Mr. Carpellotti held the position of Transportation Equipment Operator A at PennDOT's Adamsburg Stock Pile.

3

15.     Throughout his time as a PennDOT employee, Mr. Carpellotti was exposed to the systemic racism infecting District 12.

16.     Racial epithets were used and derogatory racial comments were made by supervisory and labor employees alike.

17.     Mr. Carpellotti, who is Caucasian, found the workplace racism offensive, distracting and disruptive.

18.     Mr. Capellotti first confronted his foreman and assistant county manager for their own use of offensive racial epithets no later than 2010 when they were speaking of an African-American employee.

19.     PennDOT had only one African-American, Duane Wright, in a supervisory position during the 2010-2014 time period.  The assistant county manager and some of Mr. Carpellotti's co-workers repeatedly used offensive racial epithets when speaking of Mr. Wright.

20.     Mr. Carpellotti expressed his opposition to the use of racial epithets in the workplace when they were used in his presence and the hostile work environment created by those individuals.

21.     Mr. Carpellotti's willingness to confront those exhibiting racism in the workplace created resentment against him by a number of managerial personnel and co-workers.

22.     Sometime in the 2011, Mr. Carpellotti informed Mr. Wright of the language used by others when referring to him.  Mr. Wright reported the information conveyed by Mr. Carpellotti to his immediate supervisor, Defendant Cook.

23.     As a result of the above referenced reports, a member of the District 12 labor force was discharged.

4

24.    Although it was generally understood that PennDOT had a "zero tolerance" policy for racially derogatory remarks at the workplace, Defendants did not suspend or terminate any of the management staff responsible for the racially hostile work environment.  The failure to effectively discipline management personnel was consistent with the announced practice whereby "management sticks up for management."

25.    Mr. Carpellotti was informed by Defendant Harrer and others that he would be required to testify on behalf of management at the terminated employee's unemployment compensation hearing.  PennDOT arranged for a subpoena to be issued to Mr. Carpellotti compelling his appearance at the hearing.

26.    Mr. Carpellotti's role in exposing the racism in PennDOT's Westmoreland County operations and his compelled participation in the terminated employee's unemployment compensation proceedings resulted in threats against him and retaliation by management.

27.    The retaliation against Mr. Carpellotti included being subjected to discrimination in work assignments/privileges, physical threats, the dissemination of flyers defending those who use the word "nigger" and referring to Mr. Carpellotti as a "marked man" and "BIG RAT NICK!!!."  Additionally, the Assistant County Manager, Jim DeRoss, informed Mr. Carpellotti's then foreman that Mr. Carpellotti was trying to get him fired by urging a female employee to press sexual harassment charges against him.

28.    In September 2012, Mr. Carpellotti was falsely accused of threatening a foreman by the assistant county manager.

29.    Mr. Carpellotti was suspended without pay pending further investigation by letter dated September 28, 2012 from Defendant Szczur.

5

30.     Mr. Carpellotti was informed that he would be immediately terminated if he did not agree to a grievance resolution whereby he accepted a five day suspension and signed a last chance letter prepared by Defendant Harrer.  In order to avoid the threatened immediate termination, Mr. Carpellotti agreed to the resolution even though he had done nothing wrong.

31.     The last chance letter prepared by Defendant Harrer, dated October 2, 2012, required Mr. Carpellotti, among other things to withdraw "with prejudice" all grievance related actions, causes of action, charges and like matters from all courts and administrative tribunals, including the PHRC and EEOC.

32.     By follow-up letter dated October 31, 2012, Defendant Szczur warned Mr. Carpellotti that he may be terminated for any future "infraction(s)/offense(s) of a similar or related nature . . . ."

33.     Mr. Carpellotti fulfilled all conditions imposed upon him by the grievance settlement and he was returned to the workforce as fit for duty.

34.     Duane Wright, the African-American assistant county manager, was suspended from his position for alleged work rule violations on March 11, 2013 and terminated effective April 12, 2013.

35.     Mr. Wright appealed his termination, alleging that he was the victim of racial discrimination.

36.     Mr. Carpellotti provided Mr. Wright with a written witness statement regarding the racism to which Mr. Wright was subjected.

37.     A civil service hearing was held in connection with Mr. Wright's challenge to his termination in the summer of 2013.

38.     Mr. Carpellotti was one of the witnesses who testified in support of Mr. Wright during Mr. Wright's civil service hearing.

39.     During his civil service testimony, Mr. Carpellotti related that racial slurs were consistently used by numerous PennDOT supervisory and nonsupervisory personnel when discussing Mr. Wright and other African-Americans.

40.     In objecting to one worker's use of an offensive racial epithet when referring to Mr. Wright, Mr. Carpellotti testified that he confronted the worker in front of other co-workers and told him not to use such language again.

41.     Following the Duane Wright civil service hearing, Defendant Cook ordered Mr. Carpellotti to go to the PennDOT office in Uniontown.  Once at the office, he was given a direct order by Defendant Harrer to relate what he knew about Mr. Wright's situation.

42.     As Mr. Carpellotti had already related his knowledge of events at Mr. Wright's civil service hearing, while in the presence of Defendants Szczur, Cook, Clark and Harrer, he considered Defendant Harrer's direct order as an instance of unwarranted intimidation.

43.     Mr. Carpellotti complied with Defendant Harrer's direct order and described the racially charged hostile work environment created by supervisory personnel.  He also questioned why PennDOT's zero tolerance policy was not being applied to those holding management positions.

44.     The Civil Service Commission issued its adjudication in Mr. Wright's case in April 2014.  The adjudication reinstated Mr. Wright to his management position and converted his termination to a suspension.

45.     The adjudication found that Mr. Wright had been subjected to a hostile work environment and concluded that he had been discriminated against.

46.     Mr. Wright was scheduled to return to work on May 5, 2014.

47.     PennDOT scheduled a one hour open safety forum for all Westmoreland County employees on June 24, 2014, approximately six weeks after Mr. Wright's scheduled return to work.

48.     The open forum was attended by about 180 Westmoreland County PennDOT employees.

49.     PennDOT management was represented at the June 24, 2014 forum by Defendants Szczur and Harrer, Ron Clark and Tim Cook.

50.     In opening the forum, Defendant Clark announced: "Anything on your minds, we will try to address your concerns and answer your questions."

51.     A number of PennDOT employees took the opportunity to bring their concerns to management's attention, some using vulgar language and loud, disruptive and confrontational tones.

52.     About an hour into the forum, Mr. Carpellotti stood to speak and questioned upper management's commitment to PennDOT's zero tolerance policy in racial bias matters when supervisory personnel is involved.  He pointed out that sworn testimony was presented in the

8

Duane Wright hearing about the offensive language and conduct of supervisors but that those supervisors continued to hold their positions.

53.     Although the District 12 employees had been invited by Defendant Clark to speak their minds, Defendant Harrer announced that zero tolerance was off limits.  Another employee jumped up and started yelling that zero tolerance was very relevant to the meeting and workplace safety.

54.     Defendant Cook then took the microphone from Defendant Harrer and announced that he was ending the meeting.

55.     Mr. Carpellotti had not been told to sit down; he was not directed to keep quiet; and he was not told that he had behaved inappropriately.

56.     Defendant Szczur notified Mr. Carpellotti by letter dated July 15, 2014 that, effective July 9, 2014, he was suspended without pay pending investigation of his conduct at the June 24, 2014 open forum.

57.     By letter dated August 20, 2014, PennDOT's Human Resource Director, Defendant Sherri Norris, notified Mr. Carpellotti that he had been terminated.

58.     The July 2014 suspension from and August 2014 termination of Mr. Carpellotti's employment represented a concerted  retaliatory attempt by the individual Defendants to stifle his speech regarding a matter of public import and PennDOT's violation of well established public policy - the rampant racially hostile work environment in PennDOT's Westmoreland County operations and Mr. Carpellotti's participation as a witness under oath in various administrative proceedings.

59.    The suspension and termination also represent retaliatory acts directed against Mr. Carpellotti by Defendants due to his willingness to advocate on behalf of African-American PennDOT employees who had been targeted by both management and labor for racially offensive conduct.

60.    Defendant believes and therefore avers that the individual Defendants agreed and acted together in order to effectuate the termination of his PennDOT employment.

61.    The actions of the individual Defendants in this matter were intentional, willful, outrageous, malicious, conscience shocking and were undertaken with deliberate indifference to the known and clearly established rights of Mr. Carpellotti.

62.    Upon information and belief, Mr. Carpellotti alleges that the actions of the individual Defendants represented the established and preferred practice and acquiescence of PennDOT and the Secretary of Transportation.

63.    Defendants' retaliation against Mr. Carpellotti in response to his efforts to report and remedy a racially hostile work environment in a government agency is particularly egregious in that they had encouraged the work force to speak openly about matters of concern at the June 24, 2014 forum and led conscientious employees, such as Mr. Capelotti, into believing that their good faith reports would be welcome and that their employment status would not be adversely affected.

64.    The outrageousness of Defendant's crusade against Mr. Carpellotti is their use of the grievance settlement of the trumped up disciplinary action of 2012 as a rationale for imposing the sanction of termination against Mr. Carpellotti in 2014.

10

65.     In their interactions with Mr. Carpellotti, the individual Defendants were acting on behalf of themselves and PennDOT.

66.     The individual Defendants were acting under color of state law at all times relevant to the matters discussed herein.

67.     As a result of Defendants' actions, Mr. Carpellotti has suffered the loss of his income, employment benefits and career opportunities and both professional and personal respect and reputation.

68.     Defendants' acts and omissions, as more fully described above,  have also caused Mr. Carpellotti to experience physical and emotional injury, pain, suffering, embarrassment, stress, humiliation and anguish, as well as other physical and psychological ailments and symptoms.

## IV.     LEGAL CLAIMS

### FIRST CAUSE OF ACTION  - FIRST AMENDMENT

69.     The reports of institutionalized racism and hostile work environment of a state agency charged with serving the public in its operations throughout an entire county  were matters of public concern.

70.     It is also in the public interest for a state employee to be permitted to testify under subpoena about racial hostility in the workplace without being retaliated against by those responsible for ensuring a hostile free work environment.

71.     In opposing the racially hostile work environment permitted by Defendants and in providing truthful testimony under subpoena, Mr. Carpellotti was acting in the public interest.

11

72.     Defendants retaliation against Mr. Carpellotti, as a direct and proximate result of his exercise of protected First Amendment free speech rights deprived him of his constitutional rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION - 42 U.S.C. § 1983 (EQUAL PROTECTION)

83.     The above-described conduct, policies, practices and procedures of Defendants established that Defendants discriminated against Mr. Carpellotti and deprived him of his employment in retaliation for his opposition to PennDOT's racially hostile employment practices and work environment in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

## THIRD CAUSE OF ACTION - 42 U.S.C. § 1983 (SUBSTANTIVE DUE PROCESS)

84.     The above-described conduct, policies, practices and procedures of Defendants are arbitrary, capricious and without lawful justification.

85.     Defendants' arbitrary and capricious deprivation of Mr. Carpellotti's employment on the basis of his speech and actions, including providing testimony under subpoena, in opposition to the racially hostile work environment fostered and permitted by PennDOT violate his right to substantive due process of law, as protected by the due process clause of the Fourteenth Amendment to the Constitution of the United States.

## FOURTH CAUSE OF ACTION - ART. 1, § 7 OF THE CONSTITUTION OF THE COMMONWEALTH OF PENNSYLVANIA

73.     Art. 1, § 7 of the Commonwealth's constitution provides in relevant part: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every

12

citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

74.     Defendants retaliation against and termination of Mr. Carpellotti's employment represent violations of hhis speech rights, as protected by the state constitution.

### FIFTH CAUSE OF ACTION - WRONGFUL TERMINATION

75.     The prohibitions against racially charged hostile work environments, the use of offensive racial slurs by public employees and retaliation against those who bring such matters to the light of day represent established public policy of the Commonwealth of Pennsylvania.

76.     Mr. Carpellotti engaged in protected conduct by speaking out against the racially offensive practices in a number of appropriate fora.

77.     As more fully discussed in the factual section of this Complaint, the termination of Mr. Carpellotti's employment was in retaliation for his opposition to the offensive racial practices of which he had personal knowledge.

### V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nicholas Carpellotti requests that he be awarded the following relief:

1.      Issuance of a declaratory judgment to the effect that Defendants have violated his federal and state constitutional rights;

2.      Enter a permanent injunction order against all Defendants directing the full and complete reinstatement of Mr. Carpellotti employment/seniority/benefits, the purging from all PennDOT files references to the 2012 and 2014 disciplinary actions and prohibiting Defendants from engaging in further unlawful employment practices, including additional retaliation;

13

3.      Award appropriate compensatory damages in favor of Mr. Carpellotti and against

Defendants;

4.      Award appropriate punitive damages in favor of Carpellotti and against each of

the individual Defendants;

5.      Award Mr. Carpellotti full attorney's fees and costs associated with the

preparation and prosecution of this action; and

6.      Grant such other relief as the court deems to be just and equitable.


**JURY TRIAL DEMANDED**


S/ Jon Pushinsky
JON PUSHINSKY, ESQUIRE
Pa. I.D. # 30434
1808 Law & Finance Building
Pittsburgh, PA 15219
(412) 281-6800

Lawyer for Plaintiffs

14

## VERIFICATION

I, Nicholas Carpellotti, do hereby verify that the statements and averments contained in the foregoing Verified Civil Action Complaint are true and correct.  I understand that false statements contained therein would possibly subject me to the penalties provided for by 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

4-30-2016
Date

Nicholas Carpellotti